ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| JOSE BORRERO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 309-096 |
| | ) | |
| WALT WELLS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, a federal inmate currently incarcerated at McRae Correctional Facility ("McRae") in McRae, Georgia, brought the captioned petition under 28 U.S.C. § 2241. Petitioner, argues that the Bureau of Prisons ("BOP") and Corrections Corporation of America ("CCA") are improperly executing his sentence with regard to his request to be designated to home detention under the "Elderly Offender Home Detention Pilot Program" ("Pilot Program"). (Doc. no. 1, p. 1). Respondent has filed a response and Petitioner filed a reply. (Doc. nos. 6, 8). For the reasons herein, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

I.  **DISCUSSION**

The overarching theme of Petitioner's § 2241 petition is that his request to be designated to home detention under the Pilot Program was improperly denied based on a Bureau of Immigration and Customs Enforcement ("BICE") detainer that had been lodged

against him. (Doc no. 1, pp. 1-4). Petitioner claims that he is a legal permanent resident of the United States; as such, until BICE "strips" him of his status as a permanent resident, he still enjoys the same privileges as those enjoyed by United States citizens and should be allowed to participate in the Pilot Program. (Id. at 2). Therefore, Petitioner argues that: 1) the BOP and CCA should not have used the detainer as the basis for denying his request to participate in the Pilot Program, and 2) the Court must decide whether as a legal resident, his due process rights and his rights under the equal protection clause are being violated by the BOP. (Id.; doc. no. 8).

### A. No Eligibility to Participate in the Pilot Program

The Second Chance Act of 2007 directed the BOP to conduct a pilot program to determine the effectiveness of removing certain elderly offenders from BOP facilities and placing them on home detention until the expiration of their prison terms. (Doc. no. 6, pp. 6-7 and Ex. A, Attach. 2). In response to the Second Chance Act's directives, on February 5, 2009, the BOP issued Operations Memorandum 003-2009 (5329), <u>Elderly Offender Home Detention Pilot Program</u> that outlines the eligibility criteria to participate in the Pilot Program. (Id.).

In accordance with the Second Chance Act's directives, an inmate must meet all statutory eligibility criteria established in Section 3 of Operations Memorandum 003-2009 (5392) ("Section 3") to participate in the Pilot Program. If an inmate meets all statutory eligibility criteria set forth in Section 3, then an Individual Assessment is conducted to determine whether the inmate is appropriate for placement in home detention pursuant to Section 4 of Operations Memorandum (003-2009 (5392) ("Section 4"). (Doc. no. 6, Ex. 1,

2

Attach 2). Section 4 of the Operations Memorandum 003-2009 (5392) provides:

> If an inmate meets the statutory criteria described in Section 3, staff next consider whether the inmate is appropriate to participate in the pilot program. This determination is within the discretion of Bureau staff, using sound correctional judgment, and based on information the Bureau uses to make classification and programming decisions, pursuant to Section 231(g)(5)(iv) of the Act.

Section 4 provides that factors which may make an inmate a flight risk, such as whether there is federal, state, or local detainer lodged against the inmate or a public safety factor of alien, should be considered. (Id.).

Here, Petitioner's request to participate in the Pilot Program was reviewed pursuant to the mandates of the Second Chance Act. It was determined that he had met all of the statutory eligibility criteria pursuant to Section 3. (Id. at 7-8). However, during Petitioner's Individual Assessment for appropriateness for home detention, it was determined that he was not a good candidate for the Pilot Program because BICE had lodged a detainer against him and because he has a public safety factor of alien pursuant to Section 4. (Id. at 8). Thus, pursuant to the factors set forth in Section 4, Petitioner's request to participate in the Pilot Program was denied.

Concerning the detainer, although Petitioner previously contested whether a detainer had been lodged against him (doc. no. 1, p. 5), he now concedes that fact (doc. no. 8, p. 2). However, Petitioner also argues that until he is stripped of his legal residency, the detainer should not be considered in determining his eligibility for the Pilot Program. First, as noted by Respondent (doc. no. 6, p. 12), Petitioner has not provided any evidence to call into question the veracity of the federal detainer. Second, contrary to Petitioner's belief, the BOP

3

and CCA may deny his request to participate in the Pilot Program pursuant to the "Immigration Detainer - Notice of Action" letter.[1] First, the document, entitled "Immigration Detainer - Notice of Action," addressed to Petitioner's custodian, specifically requests that the custodian accept the notice as a detainer.[2] Furthermore, Petitioner argues that his equal protection rights are being violated because of the denial of participation in the Pilot Program pursuant to the detainer. However, the BOP's use of BICE detainers in deciding prisoners' eligibility for prison programs and early release does not offend equal protection principles. Of note, courts have routinely upheld the BOP's consideration of ICE detainers in making classification decisions regarding inmates, including such issues as security level and eligibility for prison programs.[3] Indeed, Section 4 of the Operations Memorandum 003-

---

[1] Petitioner claims that even though a detainer has been filed, until he is actually stripped of his legal residency, that detainer should not be considered by the BOP and CCA in their determination for his eligibility to the Pilot Program. (Doc. no. 8). To the extent Petitioner challenges BICE's decision to lodge a detainer against him, relief is only available under § 2241 to one "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Of course, an individual does not have to be in BICE's physical custody to satisfy this requirement; rather, the "in custody" requirement is satisfied when an individual is subject to a final order of removal. See Kumarasamy v. Attorney Gen., 453 F.3d 169, (3d Cir. 2006) (citing Simmonds v. INS, 326 F.3d 351, 356 (2d Cir. 2003); Aguilera v. Kirkpatrick, 241 F.3d 1286, 1291 (10th Cir. 2001); Mustata v. United States Dep't of Justice, 179 F.3d 1017, 1021 n. 4 (6th Cir. 1999); Nakaranurack v. United States, 68 F.3d 290, 293 (9th Cir. 1995)). Nevertheless, BICE's lodging of a detainer against Petitioner, "standing alone, did not cause [Petitioner] to come within the custody of the [BICE]." Orozco v. United States Immigration and Naturalization Serv., 911 F.2d 539, 541 (11th Cir. 1990).

[2] The filing of a detainer is an informal process advising prison officials that a prisoner is wanted on other pending charges and requesting notification prior to the prisoner's release. Orozco, 911 F.2d at 541 n.2.

[3] See, e.g., Franklin v. Berry, 909 F. Supp. 21, 27-28 (D.D.C. 1995) (upholding BOP's reliance upon detainers in assigning security classifications to aliens); Limas v. McNary, 799 F. Supp. 1259, 1263 (D. Mass. 1992) (BOP's decision to deny deportable aliens prerelease

4

2009 (5392) specifically provides the BOP staff with the requisite discretion to make classification and programing decisions. Thus, Petitioner has no basis for relief.

B.     **No Constitutional Right in Housing Assignment**

To the extent Petitioner is claiming that his rights were violated because he was not designated to home detention pursuant to the Pilot Program, his argument fails. Inmates do not have any federal constitutional right to participate in rehabilitative programs.[4] Nor does an inmate have any constitutionally protected interest <u>in a particular housing assignment</u> or transfer to a particular prison. See, e.g., McKune v. Lile 536 U.S. 24, 39 (2002) (emphasis added) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); Meachum v. Fano, 427 U.S. 215, 225 (1976) (no right to incarceration at any particular prison); but see Wilkinson v. Austin, 545 U.S. 209, 225 (2005)

---

transfer to minimum security institutions did not implicate any constitutional right); Isaraphanich v. Coughlin, 715 F. Supp. 119, 120-21 (S.D.N.Y. 1989) (BOP's reliance on detainers to deny aliens access to prison programs did not violate the Equal Protection Clause); Fernandez-Collado v. I.N.S., 644 F. Supp. 741, 744 (D. Conn. 1986) ("Petitioner has neither a legitimate statutory nor constitutional entitlement to those prison programs from which he may be denied access as a result of the detainer."), *aff'd* 857 F.2d 1461 (2d Cir 1987).

[4]See, e.g., Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (Federal prisoners have no due process right to eligibility for rehabilitative programs.); Murdoch v. Washington, 193 F.3d 510, 513 (7th Cir. 1999) (no protectible liberty or property interest in attending rehabilitation program); Wishon v. Gammon, 978 F.2d 446, 450 (8th Cir. 1992)(no right to educational or vocational opportunities); Canterino v. Wilson, 869 F.2d 948, 952-54 (6th Cir. 1989) (no liberty interest in inmate classification or eligibility for work programs); Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987) (no right to particular inmate classification or eligibility for rehabilitative programs); Pugliese v. Nelson, 617 F.2d 916, 923 (2d Cir. 1980) (same); Battle v. Anderson, 564 F.2d 388, 403 (10th Cir. 1977) ("[A]n inmate does not have a federal constitutional right to rehabilitation."); Lyle v. Sivley, 805 F. Supp. 755, 759-60 (D. Ariz. 1990) (holding that Due Process Clause does not give federal prisoners a protected right to participate in drug treatment programs).

5

(Ohio prisoners had state-created liberty interest in avoiding assignment to "supermax" prison under the Fourteenth Amendment).[5]

In sum, Petitioner has not shown that his Fifth Amendment due process rights or his equal protection rights have been violated.

## II. CONCLUSION

For the above reasons, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 25th day of May, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[5]The Supreme Court's decision in Wilkinson is not instructive in the instant case. In Wilkinson, the Supreme Court held that Ohio prisoners had a Fourteenth Amendment liberty interest in avoiding assignment to a special "supermax" prison–the only one of its kind in Ohio--in which inmates' lives were closely controlled and monitored, visitation was rare and occurred only through glass walls, and "inmates were deprived of almost any environmental or sensory stimuli and of almost all human contact." 545 U.S. at 214. Placement in the prison lasted indefinitely, and prisoners otherwise eligible for parole lost their eligibility while incarcerated at the prison. Id. Petitioner has not shown that assignment to McRae poses an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" comparable to that considered by the Supreme Court in Wilkinson. Id. at 222-23 (quoting Sandin v. Conner, 515 U.S. 474, 483-84 (1995)).